UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHANNON BRONZICH and CATHLEEN FARRIS, individually and on behalf of a class of similarly situated Washington residents,<br><br>Plaintiffs,<br><br>v.<br><br>PERSELS & ASSOCIATES, LLC, a Maryland limited liability company; NEIL J. RUTHER, a Maryland attorney; JIMMY B. PERSELS, a Maryland attorney; ASCEND ONE CORPORATION, a Maryland corporation; CAREONE SERVICES, INC., a Maryland corporation; MERIX CORPORATION, a Maryland corporation; and JOHN DOES 1-5,<br><br>Defendants. | NO. CV-10-0364-EFS<br><br>**ORDER GRANTING THE CAREONE DEFENDANTS' MOTION TO STRIKE, DENYING PLAINTIFFS' MOTION TO SUPPLEMENT, AND DENYING DEFENDANTS' MOTIONS TO DISMISS** |

A hearing occurred in the above-captioned matter on April 12, 2011, in Richland, Washington.[1]  Four motions were before the Court: 1) Defendants Persels & Associates, Neil Ruther, and Jimmy Persels' (collectively, "Attorney Defendants") Motion to Dismiss, ECF No. 41; 2)

---

[1]  Matthew Zuchetto and Toby Marshall appeared on Plaintiffs' Shannon Bronzich and Cathleen Farris' behalf.  The Attorney Defendants were represented by Rita Latsinova.  The CareOne Defendants were represented by Charles Matthew Anderson and Lawrence Greenwald.

ORDER * 1

Defendants CareOne Services, Inc., Ascend One Corp., and Amerix Corp.'s (collectively, "CareOne Defendants") Joint Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, ECF No. 45; 3) CareOne Defendants' Motion to Strike References to Certain Documents in Plaintiffs' Response to the CareOne Defendants' Motion to Dismiss First Amended Complaint, ECF No. 69, and 4) Plaintiffs' Motion to Supplement their response, ECF No. 74.  Plaintiffs oppose the dismissal motions and, alternatively, seek leave to amend the First Amended Class Action Complaint ("Complaint"), ECF No. 27.[2]  Following the hearing, the Washington Supreme Court issued a Washington Debt Adjusting Act (DAA), RCW 18.28.010 *et seq.*, decision in *Carlsen v. Global Client Solutions, LLC*, --- P.3d ----, 2011 WL 1796409 (Wash. Sup. Ct. May 12, 2011); each party had an opportunity to submit a brief addressing *Carlsen*'s impact on the pending dismissal motions.  ECF Nos. 94, 95, & 97.  After reviewing the submitted material and relevant authority and hearing from counsel, the Court is fully informed.  For the reasons given below, the Court grants CareOne Defendants' motion to strike, denies Plaintiffs' motion to supplement, and denies Defendants' dismissal motions.

**A.  Filings Considered**

The CareOne Defendants ask the Court to strike three documents attached to Plaintiffs' response to their motion to dismiss: 1) a Consent Judgment entered against the CareOne Defendants in Washington's King County Superior Court, ECF No. 32-1; 2) a Washington Attorney General

---

[2]  The Attorney Defendants and CareOne Defendants oppose granting leave to amend the Complaint.

ORDER * 2

press release about a consent decree, ECF No. 32-2; and 3) a letter sent by creditor-negotiator Kenneth Studley on Ruther & Associates letterhead, ECF No. 32-6.  Plaintiffs oppose the motion and seek leave to supplement their response to the dismissal motions with a declaration filed by Joseph Gusmo, a former Persels & Associates attorney, in another lawsuit brought against many of the same defendants based on similar legal and factual theories.

"When ruling on a motion to dismiss, . . . [the court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Colony Cove Props., LLC v. City of Carson*, --- F.3d ----, 2011 WL 1108226 (9th Cir. Mar. 28, 2011) (internal citations and quotations omitted). None of the documents requested to be considered were attached to or incorporated into the Complaint.  And the Court determines that judicial notice of these documents is not appropriate.  Fed. R. Evid. 201(b) (allowing judicial notice of a fact that is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").  Accordingly, the Court grants the CareOne Defendants' motion to strike and denies Plaintiffs' motion to supplement.

The Court was also asked to take judicial notice of the Retainer Agreement, other documents between Plaintiffs and Defendants, and the Washington State Bar Association's public information relating to attorney Traci Mears, contending these documents are inherently incorporated into the Complaint's allegations.  ECF Nos. 43 & 63.  The

Court agrees that these documents are incorporated into the Complaint and will consider them. *See Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (internal quotation marks and citation omitted).

**B.    Background**[3]

The Washington-resident Plaintiffs faced financial difficulties. ECF No. 27 ¶¶ 5 & 6. Hoping to ease their financial struggle, Plaintiffs agreed to use Defendants' debt-settlement services. *Id.* ¶¶ 5 & 6.

Although Washington closely regulates debt-adjusting services through the DAA and imposes restrictions on the fees that can be charged, Plaintiffs contend Defendants manipulated these restrictions and mislead Plaintiffs and other Washington residents into believing that the Attorney Defendants[4] reviewed and approved the CareOne Defendants's[5] debt-

---

[3]    The "background" section is based on the Complaint's factual allegations and the judicially-noticed documents. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[4]    Defendant Persels & Associates is a Maryland law firm that specializes in debt-adjusting services; no attorney is licensed to practice law in Washington. ECF No. 27 ¶ 7. Mr. Ruther is an attorney and managing partner of Persels & Associates. *Id.* ¶ 8. Mr. Persels is an attorney at Persels & Associates and until 2009 had an ownership interest in the firm. *Id.* ¶ 9.

[5]    Ascend One is the parent company of CareOne and Amerix; all

adjusting activities. *Id.* ¶¶ 27-47. This scheme was initiated by the CareOne Defendants nationally advertising that they offered debt-relief services. *Id.* ¶ 29. The CareOne Defendants then referred the debtors to the Attorney Defendants, who in turn lent their names and legal titles to give credence to the debt-adjusting enterprise. A debtor would then sign a contract ("Retainer Agreement") with Persels & Associates for debt-settlement services; Plaintiffs did so. *Id.* ¶ 30. The Retainer Agreement indicated that Persels & Associates would provide the following services:

- "[W]e will negotiate with your creditors with the goal of reaching compromises of your debt that are favorable to you."

- "We will analyze your debt to determine whether you have legal defenses to payment."

- "We will advise you of rights you may have under your state's consumer protection laws, as well as under federal law."

- "We will discuss the tax ramifications of settlement with you."
- "We will answer any legal questions and deal with any legal issues that arise in connection with your debts."

- "We will review any court papers or other legal documents you receive about your debt."

ECF No. 63-1. The Retainer Agreement also states: "Our administrative staff, including CareOne Services, Inc., which provides administrative, technology and paralegal services to us, will be available to assist you with any purely administrative or non-legal issues you may experience." *Id.*

_____

CareOne Defendants are located in Maryland. *Id.* ¶¶ 10-12.

ORDER * 5

Contrary to the Retainer Agreement, the debt-adjusting services were not performed by the Attorney Defendants but rather were performed by the CareOne Defendants with no meaningful oversight by the Attorney Defendants. ECF No. 27 ¶¶ 34, 35, & 39. And the Attorney Defendants did not advise debtors that they are not licensed to practice law in Washington. *Id.* ¶ 63. Further, fees exceeding those permitted by the DAA were charged and received by the Defendants: Defendants' standardized debt settlement agreement required Plaintiffs to pay an initial fee that exceeded $25.00 and a total fee that exceeded fifteen percent (15%) of the total debt listed on the contract.[6] *Id.* ¶ 51. Both the Attorney Defendants and CareOne Defendants benefitted financially: the Attorney Defendants split the fees they collected from Plaintiffs under the Persels & Associates contract with the CareOne Defendants. *Id.* ¶ 56 & 57. The exact split of these fees is unknown by Plaintiffs.

Defendants did not successfully settle all of Plaintiffs' debts. On September 17, 2010, Plaintiffs filed this lawsuit in state court, and the Attorney Defendants removed the lawsuit to federal court on October

---

[6] Plaintiff Farris paid a $100.00 initial fee, a $149.00 monthly fee for the first five monthly payments, and a $107.00 monthly fee for the next thirteen monthly payments. In total, Plaintiff Farris was charged approximately $2,136.00 in fees, or sixty percent of her $3,100.00 debt-settlement payments. *Id.* ¶ 53. Plaintiff Bronzich paid a $200.00 initial fee, a $50.00 monthly fee, and a $20.00 insufficient fee charge. In total, Defendants charged Plaintiff Bronzich $320.00 in fees, or eighty-six percent of her $372.00 in debt-settlement payments.

18, 2010.  ECF No. 1.  Plaintiffs assert three claims against the Attorney Defendants:  1) *per se* Consumer Protection Act (CPA) claims based on DAA violation(s), 2) a non-*per se* CPA claim based on an unfair and deceptive business practice, and 3) a breach of fiduciary duty. Plaintiffs allege the CareOne Defendants committed *per se* and non-*per se* CPA violations and aided and abetted the Attorney Defendants' CPA violation(s) and fiduciary-duty breach(es).  Defendants seek dismissal of all claims.

## C.    Dismissal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level.  *Iqbal*, 129 S. Ct. 1937 (analyzing Fed. R. Civ. P. 8(a)(2)); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).  Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief.  *Twombly*, 550 U.S. at 555.  In ruling on a motion under Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff and accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

## D.    Authority and Analysis

### 1.    Attorney Defendants

The Attorney Defendants seek dismissal because 1) the Complaint fails to allege with particularity each individual Attorney Defendants'

part in the alleged deception as is required by Federal Rule of Civil Procedure 9(b), 2) the Attorney Defendants are exempt under the DAA because they provided legal services, 3) no non-*per se* CPA claim or breach-of-fiduciary-duty claim is pled, 4) the Complaint does not support personal jurisdiction as to the individual Defendants, and 5) the aiding-and-abetting claim fails. Plaintiffs oppose the motion, contending the Complaint's factual allegations are sufficient under either Rule 8 or 9(b), the DAA applies to the Attorney Defendants because their entire legal practice is debt adjusting, this Court has personal jurisdiction over Mr. Ruther and Mr. Persels, and an aiding and abetting claim exists as recognized by the Washington Supreme Court in *Carlsen*, 2011 WL 1796409, at 6.

a. *Personal jurisdiction: individual defendants*

The Court begins with the personal jurisdiction issue. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984) (recognizing that the Fourteenth Amendment's due process clause requires that an individual have had sufficient minimum contacts such that the maintenance of the lawsuit will not offend the traditional notions of fair play and substantial justice). Washington's long-arm statute provides a court with jurisdiction over any person who "transact[s] any business within this state" and any person who "commi[ts] a tortious act within this state." RCW 4.28.185(1)(a) & (b). Likewise, the CPA provides, "[p]ersonal service of any process in an action under [the CPA] may be made upon any person outside the state if

such person has engaged in conduct in violation of this chapter which has had the impact in this state . . . ."[7]  RCW 19.86.160.

The Court finds the Complaint allges sufficient facts to allow the Court to exercise personal jurisdiction over Mr. Ruther and Mr. Persels. The Complaint alleges that Mr. Persels and Mr. Ruther transacted business in Washington.  And Mr. Persels signed Ms. Farris' retainer agreement, and Mr. Ruther signed Ms. Broznich's retainer agreement, ECF No. 43-1. In addition, as owners and/or managing members of Persels & Associates, they plausibly established, directed, ratified, and financially benefitted from the alleged unfair conduct.  The Attorney Defendants' motion to dismiss is denied in part.

　　　　b.　*Rule 9(b)'s heightened-pleading requirement*

Rule 9(b) requires "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Attorney Defendants submit Rule 9(b)'s particularity requirement applies to the Complaint, rather than Rule 8(a)(2)'s short-and-plain-statement requirement.  Rule 9(b)'s particularity requirement applies not only when a fraud claim is alleged but also when the complaint "sounds" or is "grounded" in fraudulent conduct. *Vess v. Ciba-Giegy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (noting, if a complaint alleges some fraudulent and some non-fraudulent conduct, Rule 9(b) applies only to the fraudulent conduct).

---

[7] Both the corporation and its officer are liable under the CPA if the officer participated in the wrongful conduct or knowingly approved the conduct. *Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 554 (1979).

ORDER * 9

To satisfy Rule 9(b)'s particularity requirement, the plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  This heightened-pleading requirement is to provide the defendant with sufficient notice of the particular alleged misconduct so that it can defend against the charge.  *Vess*, 317 F.3d at 1106.

The Court determines the Complaint alleges both fraudulent and non-fraudulent conduct.  The allegation sounding in fraud is that the Attorney Defendants allowed their legal status to be used by the CareOne Defendants to give the impression that an attorney was adjusting the debts.  Plaintiffs' other allegations pertain to the amount of money being charged for the debt-adjusting services: these allegations do not sound in fraud.  Accordingly, the Court applies Rule 9(b)'s heightened-pleading requirement to the Complaint's fraud-sounding allegation and Rule 8(a) to the remainder of the allegations.

The Court finds the Complaint's fraud-sounding allegation, i.e., conduct conveying an impression that an attorney, not a lay person, was performing debt adjusting, satisfies Rule 9(b).  The Complaint identifies the "who" component of the fraudulent scheme as the Attorney Defendants and the CareOne Defendants.  ECF No. 27 ¶¶ 28-30.  The "what" and "how" are that the Attorney Defendants allowed the CareOne Defendants to advertise and advise debtors that the Attorney Defendants would perform the debt-adjusting services; the Retainer Agreement confirmed that the Attorney Defendants would perform the debt-adjusting services and the CareOne Defendants would merely provide administrative and technical assistance.  The "where" requirement is also satisfied: the Complaint

alleges the CareOne Defendants engage in these "debt adjusting activities throughout the United States without the supervision, control or meaningful involvement of Persels & Associates." *Id.* ¶ 41. Specifics as to the "when" requirement are lacking. However, the Court does not find the lack of "when" specificity fatal because the Attorney Defendants possess the information documenting when they communicated with Plaintiffs and performed debt-adjusting services.

In summary, the Court finds the Complaint's who, what, where, when, and how allegations are sufficient to satisfy Rule 9(b)'s particularly requirement. The circumstances constituting the alleged fraud are specific enough to give Defendants notice of the particular alleged misconduct so that they can defend themselves. Accordingly, the Attorney Defendants' motion to dismiss is denied in part.

c. *RCW 18.28.010(2)(a)'s exemption*

The Attorney Defendants ask the Court to dismiss the *per se* CPA claim, which is based on a violation of the DAA, because as attorneys they are exempt from the DAA. Plaintiffs disagree, contending the DAA applies to the Attorney Defendants because 1) their sole legal practice is adjusting debts, and 2) neither Mr. Persels, Mr. Ruther, nor any other Persels & Associates attorney is licensed to practice law in Washington and therefore they cannot benefit from RCW 18.28.010(2)(a)'s exemption.

To establish a *per se* CPA violation, Plaintiffs must prove: 1) a violation of a statute or regulation that constitutes a *per se* unfair or deceptive act or practice, 2) an injury to business or property, and 3) a causal link between the unfair or deceptive act or practice and the injury. *See Columbia Physical Therapy, Inc. v. Benton Franklin*

*Orthopedic Assoc.*, 168 Wn.2d 421, 422 (2010) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-93 (1986)).  RCW 18.28.185 makes a DAA violation a *per se* unfair or deceptive act or practice.  Accordingly, if Plaintiffs establish a DAA violation, they have satisfied the first element for a *per se* CPA claim.

The DAA applies only to debt adjusters.  The DAA defines a "debt adjuster" as:

> any person engaging in or holding himself or herself out as engaging in the business of debt adjusting for compensation . . . . [including] any person known as a debt pooler, debt manager, debt consolidator, debt prorater, or credit counselor.

RCW 18.28.010(2).  Yet, the following are not included in the definition of debt adjuster: "[a]ttorneys-at-law . . . while performing services solely incidental to the practice of their professions."  *Id.* § 18.28.010(2)(a).  Therefore, the issues are whether the Attorney Defendants are debt adjusters and, if they are, whether they can benefit from the RCW 18.28.010(2)(a) exemption (hereinafter, "services-solely-incidental-to-legal-practice exemption").  In analyzing these issues, the Court focuses on the DAA's plain meaning and the Complaint's allegations. *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11-12 (2002) (focusing on statute's plain meaning).

First, the Court finds the Complaint alleges sufficient facts to plausibly find the Attorney Defendants engaged in debt adjusting.  *See* RCW 18.29.010(1) (defining "debt adjusting" as "the managing, counseling, settling, adjusting, prorating, or liquidating of the indebtedness of a debtor, or receiving funds for the purpose of distributing said funds among creditors in payment or partial payment of obligations of a

ORDER * 12

debtor"). Therefore, the Attorney Defendants are plausibly debt adjusters.

The next question is whether the Attorney Defendants benefit from the services-solely-incidental-to-legal-practice exemption. RCW 18.29.010(2)(a). Plaintiffs contend the Attorney Defendants may not rely on this exemption if they are not licensed to practice law in Washington. The Court agrees. Under Washington Rule of Professional Conduct (RPC) 5.5(b), an attorney who systematically and continuously practices law in Washington and holds himself out as being admitted to practice law in Washington, must be admitted by the Washington State Bar Association (WSBA).[8] The Court determines this admission requirement helps define which attorneys may benefit from the DAA's exemption. It would defy the Washington legislature's intended purpose for the DAA, which was to stop debt-adjusting industry abuses, if non-Washington admitted attorneys benefit from the DAA's services-solely-incidental-to-legal-practice exemption. *See Carlsen*, 2011 WL 1796409, at 5 ("[A]s a remedial statute enacted to stem the 'numerous unfair and deceptive practices' rife in the

---

[8] Plaintiffs point to RPC 5.5(b) to identify WSBA's admission requirements for attorneys; Plaintiffs are not basing a cause of action on an RPC 5.5 violation. *Compare Oreskovich v. Eymann*, 129 Wn. App. 1032, 3 (Sept. 19, 2005) (unpublished opinion) ("The complaint also alleges violations for the Rules for Lawyer Discipline. That cause of action fails because those rules provide only a public, disciplinary remedy, not a private remedy.").

growing debt adjustment industry, the debt adjusting statute should be construed liberally in favor of the consumers it aims to protect."). Accordingly, the Court determines attorneys who systematically and continuously practice law in Washington without the WSBA's permission to do so may not benefit from the DAA's services-solely-incidental-to-legal-practice exemption.

Here, it appears undisputed that neither Mr. Ruther nor Mr. Persels are licensed to practice law in Washington, and it is plausible that no other Persels & Associates lawyer is licensed to practice law in Washington.[9] Notwithstanding the lack of a Washington-admitted attorney, the Complaint alleges Persels & Associates established a systematic and continuous debt-adjusting practice in Washington. It is plausible that the Attorney Defendants may not rely on the services-solely-incidental-to-legal-practice exemption.

Even if the Attorney Defendants are licensed to practice in Washington and therefore can seek reliance on the services-solely-incidental-to-legal-practice exemption, the Court determines this

_____

[9] The Attorney Defendants submit that Traci Mears, whose name is on the Persels & Associates letterhead, is admitted to practice law in Washington. Although Ms. Mears is admitted to practice law in Washington, her law firm is identified as the Mears Law Firm in Wyoming; therefore, it is plausible that she is not an employee or partner of Persels & Associates. Accordingly, the Court defers to the Complaint's allegation that no Persels & Associates attorney is admitted to practice in Washington.

exemption does not apply to an attorney or law firm specializing in debt adjustment.

Again, in reaching this determination, the Court focuses on the DAA's language. *See Dep't of Ecology*, 146 Wn.2d at 11-12. RCW 18.29.010(2)(a) states that "[a]ttorneys-at-law . . . while performing services solely incidental to the practice of their professions" are not debt adjusters. Neither the DAA nor Washington case law define or interpret "solely incidental to" in this context. The Tenth Circuit has analyzed this phrase in the context of another statute, and the Court finds the Tenth Circuit's analysis instructive. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153 (10th Cir. 2011). In *Thomas*, the Tenth Circuit interpreted the Investment Advisers Act's (IAA) "investment advisers" definition, which exempted "any broker or dealer whose performance of such services is *solely incidental to* the conduct of his business as a broker or dealer and who receives no special compensation thereof." 15 U.S.C. § 80b-2(a)(11)(C) (emphasis added). Because the IAA does not define "solely incidental to," the Tenth Circuit turned to dictionaries to interpret that language. 631 F.3d at 1161-63. The Tenth Circuit recognized "incidental" has two components: "To be considered incidental, two actions or objects must be related in a particular way—the incidental action or object must occur only as a result of or in connection with the primary. Additionally, the incidental action or object must be secondary in size or importance to the primary." *Id.* at 1162. Ultimately, the Tenth Circuit determined the exemption applied when the broker-dealer:

> g[a]ve investment advice only in connection with the primary
> business of selling securities. On the other hand, broker-
> dealers who give advice that is not connected to the sale of

securities—*or whose primary business consists of giving advice*—do not meet the first prong of the broker-dealer exemption.

*Id.* at 1164 (emphasis added).

Applying this reasoning to the DAA's services-solely-incidental-to-legal-practice exemption, the Court determines that Washington-admitted attorneys are exempted if they adjust a debt in connection with other legal services. *See also Washington v. Gonzalez*, 168 Wn.2d 256, 263 (2010) (instructing that a statute's words are "given their ordinary meaning"). Therefore, an attorney specializing in debt adjusting is subject to the DAA because the attorney's debt adjusting is not "solely incidental to" any legal practice but rather *is* the attorney's legal practice. This interpretation is consistent with the Washington Supreme Court's directive that the DAA's exemptions are to be narrowly interpreted in order to protect debtors from unfair and deceptive practices. *Carlsen*, 2011 WL 1796409, at 5 ("A narrow interpretation of RCW 18.28.010(2)(b) protects consumers by preventing companies from escaping the debt adjusting statute . . . ."). The services-solely-incidental-to-legal-practice exemption is intended to exempt the attorney who dabbles in debt-adjustment as part of the attorney's broader legal practice. The legal-services exemption does not protect an attorney whose primary practice is adjusting debts.

The Attorney Defendants argue the legislature clearly intended to exclude all legal services performed by an attorney from the DAA's scope because attorneys are already regulated by the WSBA. The Court agrees

that certain debt-adjusting activities are legal in nature.[10]    But the Court does not agree that the DAA's application to attorneys is restricted due to the WSBA's authority over attorneys practicing law in Washington, especially because the RPCs have been established by the legal profession and adopted by the Washington Supreme Court, not enacted by the legislature. *See Hizey v. Carpenter*, 119 Wn.2d 251, 261 (1992) ("This court, not the Legislature, adopted the Code of Professional Responsibility and the Rules of Professional Conduct by court order, pursuant to its power to regulate the practice of law within the state."). Neither the DAA's statutory language or legislative history indicate an intent to exclude all attorney services from the DAA. If the legislature had such an intent, it could have worded the exemption as follows: "attorneys-at-law . . . while performing services during the practice of their profession[]." The Legislature did not do so.

Further, the Court's ruling is supported by the language of the second exemption in RCW 18.28.010(2). Subsection (b) excludes the following from the definition of debt adjuster:

> Any person, partnership, association, or corporation doing business under and as permitted by any law of this state or of the United States relating to banks, consumer finance businesses, consumer loan companies, trust companies, mutual savings banks, savings and loan associations, building and loan associations, credit unions, crop credit associations, development credit corporations, industrial development corporations, title insurance companies, or insurance companies.

---

[10]    For instance, identifying a debtor's defenses to a debt, preparing certain documents, and representing the debtor in court would constitute legal services.

ORDER * 17

RCW 18.28.010(2)(b). Subsection (b) does not include "solely incidental to" language. Accordingly, the legislature clearly limited subsection (a) to apply to services being performed by the attorney which are solely incidental to the practice of law: not all legal services. And the other five debt-adjuster exemptions support a determination that the legislature carefully chose the language which was to apply in each subsection. *Id.* § 18.28.010(2)(c)-(g).

Neither party cited to RCW 18.28.130, which is a section of the DAA titled, "Legal services–Rendering or obtaining–Using name of attorney–Prohibited." Nonetheless, the Court deems it important to address this section. Section 18.28.130 prohibits a debt adjuster from performing certain legal services, such as preparing a release of garnishment and representing that he is authorized to furnish legal advice. *Id.* § 18.28.130(1) & (2). On first glance, it appears nonsensical that an attorney could be included as a "debt adjuster" because the attorney would be prohibited from engaging in the RCW 18.28.130-listed legal services. However, the Court understands RCW 18.28.130's purpose is to identify those debt-adjusting services that may cross the line into the practice of law, and to expressly prohibit a non-attorney debt adjuster from engaging in the listed legal services. Section 18.28.130 does not affect the DAA's application to attorneys who do not qualify for the services-solely-incidental-to-legal-practice exemption.

Based on the above rulings and the Complaint's factual allegations, the Court denies the Attorney Defendants' motion to dismiss the *per se* CPA claim because it is plausible that the Attorney Defendants are not

ORDER * 18

licensed to practice law in Washington and/or the provided legal services were not solely incidental to their legal practice.

        d.   *Non-per se CPA claim*

    Plaintiffs also assert a non-*per se* CPA claim.   Defendants seek dismissal of this claim as well.   To establish a non-*per se* CPA claim, Plaintiffs must establish: 1) an unfair or deceptive act or practice, 2) the act or practice occurred in the conduct of trade or commerce, 3) the act or practice impacted the public interest, 4) a suffered injury to business or property, and 5) a causal link between the unfair or deceptive act or practice and the injury. *See Columbia Physical Therapy*, 168 Wn.2d at 422.

    The Court finds the Complaint alleges sufficient facts to plausibly support a non-*per se* CPA claim.   Even if the alleged acts do not violate the DAA, they support a reasonable finding that the Attorney Defendants engaged in an unfair or deceptive act or practice: a practice that occurred in commerce, impacted the public interest, and caused Plaintiffs to suffer a financial injury.   The Attorney Defendants' motion is denied in part.

        e.   *Breach-of-fiduciary-duty claim*

    Plaintiffs allege the Attorney Defendants "breached their fiduciary duties of the highest degree of good faith, diligence and utmost undivided loyalty to their clients . . . ."   ECF No. 27 ¶ 85. The Attorney Defendants submit this claim fails because it may not be based on a Washington Rule of Professional Conduct (RPC) violation, citing to *Hizey v. Carpenter*, 119 Wn.2d 251, 261 (1992).

In *Hizey*, the Washington Supreme Court determined a RPC violation may not support a legal malpractice claim. 119 Wn.2d at 259-60. The Washington Supreme Court emphasized that a claim for legal malpractice focuses on the duty of care owed to the client: a duty that is established by the relationship and not by the RPCs. Central to the court's decision was 1) the RPCs are adopted by the court itself rather than the legislature, 2) the RPCs' purpose is to internally regulate the practice of law in Washington, and 3) the RPCs' preamble states that an RPC violation is grounds for a disciplinary process, not civil liability. RPC Preamble (2010 ed.) ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such case that a legal duty has been breached"). Because an RPC violation and a legal malpractice claim are pursued in two separate spheres, an RPC violation has no bearing on whether the attorney conducted legal malpractice. *Id.*

*Hizey*, however, did not answer the question of whether a breach-of-fiduciary-duty claim brought against an attorney may be based on an RPC violation. And more fundamentally, *Hizey* did not answer whether a legal malpractice claim and a breach-of-fiduciary-duty claim are two independent causes of action. *Hizey* identified the elements for a legal malpractice claim as:

> (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

*Id.* at 260-61; *see also Bowman v. Two*, 104 Wn.2d 181, 185 (1985).

ORDER * 20

Yet, these legal-malpractice elements mirror the elements for a breach-of-fiduciary-duty claim against an attorney. *See Al-Ghezzi v. McCoy*, 134 Wn. App. 1066, 2006 WL 2664460 (Sept. 18, 2006) (unpublished opinion) (quoting *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 433-34 (2002), for the elements of a breach-of-fiduciary-duty claim: "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury"; which in turn cites *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 426 (1994); which in turn cites *Hansen v. Friend*, 118 Wn.2d 476, 479 (1992) (setting forth negligence elements)); *see also* 29 Wash. Prac., Wash. Elements of an Action: breach of fiduciary duties § 11:1 (2010-2011 ed.). Accordingly, the Court became concerned that a legal-malpractice claim and a breach-of-fiduciary duty claim may be duplicative. *See Jones v. Marshall*, 102 Wn. App. 1017, 2000 WL 1230247 at 2 (2000) (unreported) ("An action for breach of an attorney's fiduciary obligations is properly brought as an action for attorney malpractice."); *see also* Sande Buahi, Lawyers as Fiduciaries, 53 St. Louis U.L.J. 553, 586-86 (Winter 2009) (discussing different courts' treatment of these two claims).

The Court found two unpublished decisions in which the plaintiff brought both a legal malpractice claim and a breach-of-fiduciary-duty claim; however, these cases did not address the question of whether it was proper for the plaintiff to bring such claims or whether they are duplicative. *Al-Ghezzi*, 2006 WL 2664460;[11] *Hager v. Law Offices of Bruce*

---

[11] In *Al-Ghezzi*, the Washington Court of Appeals addressed whether

*W. Hilyer, P.S.*, 123 Wash. App. 1011, 2004 WL 1988086 (Sept. 7, 2004) (unpublished).[12]

Although Washington courts have not clearly identified why a plaintiff may pursue both a legal malpractice and a breach-of-fiduciary-duty claim against the attorney when these claims' elements mirror one another, the Court rules that a plaintiff may pursue both claims. A legal malpractice claim focuses on the attorney's alleged negligent performance. *See Hizey*, 119 Wn.2d at 261 ("To comply with this duty of care, an attorney must exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in Washington."). Whereas, a breach-of-fiduciary-duty claim focuses on the loyalty owed by the attorney to the client. Restatement (Third) of Agency § 8.01: General Fiduciary Principle (2006); *see also* Lawyers as Fiduciaries, 53 St. Louis

---

summary judgment on both claims in the attorney's favor was appropriate because the plaintiff failed to prove causation.

[12]    In *Hager*, the plaintiff alleged that the attorney breached his fiduciary duty by withdrawing money from the trust account and committed legal malpractice by pressuring him to settle and by advising him to sue another attorney. To prove his breach-of-fiduciary-duty claim, the plaintiff was allowed to present evidence that the attorney violated the RPCs; whereas, the plaintiff was not permitted to support his legal malpractice claim with an RPC violation. The Court of Appeals relied on *Hizey*'s legal-malpractice elemental statement, but did not set forth the elements for a breach-of-fiduciary-duty claim. *Id.* at 5.

U.L.J. at 586-86 ("A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, using the client's confidences improperly, taking advantage of the client's trust, engaging in self-dealing, or making misrepresentations."). Accordingly, although both claims require the plaintiff to prove a duty, those duties' sources diverge.

The next issue is whether the source of the duty impacts whether the RPCs may be considered in determining whether that duty was breached. The Court concludes it should not and, therefore, determines *Hizey*'s RPC-violation prohibition also applies to a breach-of-fiduciary-duty claim brought against an attorney. *Hizey's* prohibition was based on the significant differences between the purpose of a civil malpractice action and an RPC disciplinary proceeding. And the Washington Supreme Court deferred greatly to the RPCs preamble, which states, "The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." RPC Preamble; *Hizey*, 119 Wn.2d at 261. The Court recognizes it reaches a decision contrary to the Washington Court of Appeals in *Cotton v. Kronenberg*, 111 Wn. App. 258, 265 (2002) (allowing a plaintiff to support a breach-of-fiduciary-duty claim with evidence that the attorney violated the RPC). However, because the elements for legal malpractice and breach-of-fiduciary-duty mirror each other and the source of the duty for both claims is the lawyer-client relationship, the Court rules that *Hizey*'s prohibition extends to breach-of-fiduciary-duty claims brought against an attorney.

There is no sound rationale for allowing a plaintiff bringing a breach-of-fiduciary-duty claim to rely on an RPC violation, while prohibiting a plaintiff bringing a legal-malpractice claim from relying on an RPC violation. The duty of loyalty owed to a client and breach thereof can be established without reliance on an RPC.

Accordingly, the Court rules that Plaintiffs may not rely on an RPC violation to support their breach-of-fiduciary-duty claim. This prohibition, however, does not equate to dismissal of Plaintiffs' claim. The Court finds the Complaint alleges sufficient facts to plausibly show that the Attorney Defendants breached their duty of loyalty by placing their financial interests above Plaintiffs' interests.

> f. *Aiding and abetting*

Defendants argue that an aiding and abetting theory of liability does not exist for a CPA claim. In *Carlsen*, the Washington Supreme Court determined that a civil cause of action lies for aiding and abetting a violation of the DAA: the cause of action is a *per se* CPA claim. *Id.* at 6.

> g. *Summary*

The Court denies the Attorney Defendants' motion. The Court has personal jurisdiction over Mr. Persels and Mr. Ruther and Plaintiffs may pursue all claims, so long as they do not rely on an RPC violation.

> 2. The CareOne Defendants' Motion to Dismiss

The CareOne Defendants seek dismissal of 1) the *per se* claims based on a DAA violation and aiding and abetting a DAA violation, and 2) the non-*per se* CPA claim, and 3) aiding and abetting a breach of fiduciary duty claim.

ORDER * 24

a.   *Per se CPA claim: direct violation of DAA*

The CareOne Defendants argue the DAA does not apply to them for the following three reasons:  1) they benefit from the services-solely-incidental-to-legal-practice exemption, 2) they did not have a contractual relationship with Plaintiffs, and 3) the alleged facts do not plausibly support a  finding that the CareOne Defendants violated the DAA.  Plaintiffs contest each of these three arguments.

i.   Services-solely-incidental-to-legal-practice exemption

For purposes of this motion, it appears the CareOne Defendants do not dispute that the Complaint's factual allegations support a plausible finding that they are debt adjusters.  Instead the CareOne Defendants' argument focuses on whether the services-solely-incidental-to-legal-practice exemption applies to them because they served as the Attorney Defendants' agent and performed solely administrative and technical tasks.

This argument is unsuccessful for two reasons. First, the Complaint alleges the CareOne Defendants were not simply performing administrative or technical tasks for the Attorney Defendants but rather the CareOne Defendants adjusted debts with no oversight by the Attorney Defendants. Second, even if the CareOne Defendants performed merely administrative and technical tasks for the Attorney Defendants, the services-solely-incidental-to-legal-practice exemption does not apply.  The language of the services-solely-incidental-to-legal-practice exemption does not include language indicating it applies to the agents or employees of the attorney-at-law, or any of the other listed professionals.   RCW

18.28.010(2)(a).  *See Carlsen*, 2011 WL 1796409, at 5 (finding the RCW 19.28.010(2)(b) exemption does not apply to a bank's agent).

The CareOne Defendants highlight that the RPCs permit an attorney to hire and utilize agents to perform administrative and technical tasks. *See* RPC 5.3 & 5.5, cmt. 2.  However, if the legislature intended for the services-solely-incidental-to-legal-practice exemption to apply to the agents or employees of an attorney, then the legislature would have included them in the language.  Such language is not present; and the Court will not add it.  The CareOne Defendants' motion is denied in part.

ii.  Absence of contractual relationship

The CareOne Defendants also argue that the Plaintiffs' *per se* CPA claim fails because there is no contractual relationship.  Plaintiffs respond that the DAA does not require a contractual relationship.

Plaintiffs' *per se* CPA claim is based on either a direct violation or aiding and abetting a violation of the DAA.  The Court turns to the DAA to determine whether a contractual relationship is required for either a direct violation or for aiding and abetting a direct violation. After reviewing the DAA's language and purpose, the Court determines a contractual relationship between the debtor and the aider and abettor is not required.  *See* RCW 19.28.190 (establishing a misdemeanor crime for a person who violates "any provision of this chapter or aids or abets such violation").  The DAA's expansive scope, which includes aider and abettors, shows that the legislature intended the DAA to also apply to wrongdoers who are not in contractual privity with the debtor.

And the Court also finds that a direct violation of the DAA may occur without contractual privity between the debtor and the debt

adjuster.   First, the definition of debt adjuster does not require a contractual relationship.   RCW 18.28.010(2).  Second, the Washington legislature sought to eradicate debt-adjusting abuses.   Requiring a contractual relationship would narrow the DAA's application and impede the DAA's purpose.  *See Carlsen*, 2011 WL 1796409, at 3 ("It is unreasonable to suggest that the legislature intended to allow companies whose activities fit the broad statutory definition of "debt adjusting" to nonetheless escape regulation by splitting the traditional functions of a debt adjuster between multiple entities.").   Accordingly, the CareOne Defendants' motion is denied in part.

### iii. Alleged DAA violation

The CareOne Defendants next argue the Complaint fails to allege sufficient facts to support a DAA violation.   They highlight that RCW 18.28.090[13] invalidates the debt-adjuster's contract only if the "debt adjuster contracts for, receives or makes any charge in excess" of the DAA's maximums.

The Complaint does not allege that Plaintiffs entered into a contract with the CareOne Defendants.   Yet, the DAA's purpose will not be met if multiple entities are permitted to split the traditional

---

[13]  Section 18.28.090 states:

> If a debt adjuster contracts for, receives or makes any charge in excess of the maximums permitted by this chapter, except as the result of an accidental and bona fide error, the debt adjuster's contract with the debtor shall be void and the debt adjuster shall return to the debtor the amount of all payments received from the debtor or on the debtor's behalf and not distributed to creditors.

RCW 18.28.090.

ORDER * 27

functions of a debt adjuster.  *See Carlsen*, 2011 WL 1796409, at 3. Accordingly, the Court interprets debt adjuster under RCW 18.28.090 and the DAA's other sections restricting debt adjusting to apply to the multiple entities claimed to be serving the traditional debt-adjusting functions.

> iv.  Summary

For the above-given reasons, Plaintiffs *per se* CPA claim survives dismissal; the CareOne Defendants' motion is denied in part.

> b.  *Non-per se CPA Claim*

The CareOne Defendants also argue that Plaintiffs failed to state a non-*per se* CPA claim.  Plaintiffs respond that there are sufficient facts to plausibly show that the CareOne Defendants violated the CPA, regardless of any *per se* DAA violation, by alleging that the CareOne Defendants utilized a law firm as a front for their for-profit debt settlement business.  The Court agrees with Plaintiffs: the Complaint's factual allegations support a plausible non-*per se* CPA violation by the CareOne Defendants.

> c.  *Aiding and abetting*

The CareOne Defendants maintain that Plaintiffs' claims for aiding and abetting fail because neither the CPA nor DAA create a cause of action for aiding and abetting and Plaintiffs have not stated a claim against the Attorney Defendants for breach of fiduciary duty.  For the reasons given above, the Court denies the CareOne Defendants' motion as it relates to the *per se* CPA claim based on aiding and abetting a DAA violation.  *See Carlsen*, 2011 WL 1796409, at 6.  And the Court also denies the motion to dismiss the claim that the CareOne Defendants aided

and abetted the Attorney Defendants' alleged breach of fiduciary duty. *See Cain v. Dougherty*, 54 Wn.2d 466, 472 (1959) (quoting Restatement (First) Torts § 876: Persons Acting in Concert) (setting forth three grounds for civil liability for aiding and abetting the tortious conduct of another).

**E.   Conclusion**

   For the reasons given above, **IT IS HEREBY ORDERED:**

   1.   CareOne Defendants' Motion to Strike References to Certain Documents in Plaintiffs' Response to the CareOne Defendants' Motion to Dismiss First Amended Complaint, **ECF No. 69**, is **GRANTED.**

   2.   Plaintiff's Motion to Supplement, **ECF No. 74**, is **DENIED.**

   3.   The Attorney Defendants' Motion to Dismiss, **ECF No. 41**, is **DENIED.**

   4.   The CareOne Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, **ECF No. 45**, is **DENIED.**

   **IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide a copy to counsel.

   **DATED** this ___27th___ day of May 2011.


                         S/ Edward F. Shea
                    _____
                         EDWARD F. SHEA
                    United States District Judge