UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHANNON BRONZICH and CATHLEEN FARRIS, individually and on behalf of a Class of similarly situated Washington residents,<br><br>                    Plaintiffs,<br><br>     v.<br><br>PERSELS & ASSOCIATES, LLC, et al.,<br><br>                    Defendants. | NO:  10-CV-0364-TOR<br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT |

BEFORE THE COURT is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 273). This matter was heard without oral argument on September 10, 2012. The Court has reviewed the motion and the parties' supplemental submission, and is fully informed. For the reasons discussed below, the Court will preliminarily approve the proposed settlement.

ORDER GRANTING PRELIMINARY APPROVAL ~ 1

BACKGROUND

This is a class action lawsuit alleging violations of Washington's Debt Adjusting Act ("DAA") and the Washington Consumer Protection Act ("CPA"). Plaintiffs allege that Defendants systematically charged Washington consumers illegal debt settlement fees from September 2006 to present. This Court previously ruled that the DAA's statutory fee restrictions apply to Defendants notwithstanding the fact that their services are purportedly provided by licensed attorneys. ECF No. 98, 155. Following that ruling, the parties engaged in two separate mediation sessions. The latter session produced a proposed settlement, which the parties now ask the Court to preliminarily approve.

DISCUSSION

**A. Standard for Preliminary Approval of Class Action Settlement**

A court must perform two separate inquiries when evaluating a motion for preliminary approval of a proposed class action settlement reached prior to class certification. First, a court must make a preliminary determination that certification of the proposed class is appropriate under Rule 23(a) and one of the subsections of Rule 23(b). *Manual for Complex Litigation* (Fourth) § 21.632 (2008). Second, a court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms [under Rule 23(e)(2)] and must direct the preparation of notice of the certification, proposed settlement, and

1   date of the final fairness hearing." *Id.*  In making this latter determination, a

2   court's role is to ensure that the proposed settlement falls within the "range of

3   reasonableness" under Rule 23(e)(2) such that proceeding with notice to class

4   members and a formal fairness hearing would be worthwhile.  4 *Newberg on Class*

5   *Actions* § 11:26 (4th ed. 2002).

6   **B. Appropriateness of Class Certification**

7         Class certification is governed by Rule 23(a) and (b) of the Federal Rules of

8   Civil Procedure.  Under Rule 23(a), a plaintiff seeking class certification must

9   demonstrate that "(1) the class is so numerous that joinder of all members is

10  impracticable; (2) there are questions of law or fact common to the class; (3) the

11  claims or defenses of the representative parties are typical of the claims or defenses

12  of the class; and (4) the representative parties will fairly and adequately protect the

13  interests of the class."  Fed. R. Civ. P. 23(a).  When presented with a motion to

14  certify, a court must perform a "rigorous analysis" to determine whether each of

15  these prerequisites has been satisfied.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161

16  (1982).  "Frequently that 'rigorous analysis' will entail some overlap with the

17  merits of the plaintiff's underlying claim."  *Wal-Mart Stores, Inc. v. Dukes*, ---

18  U.S. ---, 131 S. Ct. 2541, 2551 (2011); *see also Ellis v. Costco Wholesale Corp.*,

19  657 F.3d 970, 981 (9th Cir. 2011) (noting that a district court *must* consider the

20  merits of an underlying claim to the extent that they overlap with the Rule 23(a)

1    requirements).

2         A class action plaintiff must also demonstrate that certification is appropriate

3    under Rule 23(b). Where, as in this case, a plaintiff seeks certification of a so-

4    called "damages class" under Rule 23(b)(3), he or she must demonstrate that (1)

5    "questions of law or fact common to class members predominate over any

6    questions affecting only individual members;" and (2) "a class action is superior to

7    other available methods for fairly and efficiently adjudicating the controversy."

8    Fed. R. Civ. P. 23(b)(3).  As the party seeking certification, the plaintiff bears the

9    burden of establishing that these requirements have been satisfied.  *Mazza v. Am.*

10   *Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

11        In this case, Plaintiffs have sought preliminary certification of a class

12   consisting of:

13        All natural persons who entered into retainer agreements with Griffith &
         Ruther, LLC, Ruther & Associates, LLC, or Persels & Associates, LLC,
14        between September 2, 2006 and the date of Preliminary Approval of the
         Settlement Agreement and who were residents of Washington at the time of
15        entering into such agreements.

16   ECF No. 274, Exhibit 1, at 11.  For the reasons discussed below, the court

17   preliminarily concludes that certification of this class is appropriate under Rule

18   23(a) and Rule 23(b)(3) as to Plaintiffs' claims for violations of the DAA and *per*

19

20

ORDER GRANTING PRELIMINARY APPROVAL ~ 4

*se* violations of the CPA only.[1]

        1. <u>Rule 23(a) Prerequisites</u>

           i. *Numerosity*

Rule 23(a)(1) requires that a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Whether joinder would be impracticable depends upon the facts and circumstances of each case and does not, as a matter of law, require any specific minimum number of class members." *Smith v. Univ. of Washington Law School*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998). In general, however, a class consisting of forty or more members is presumed to be sufficiently numerous. *In re Washington Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011).

The parties assert that the proposed class of plaintiffs in this case consists of approximately 2,938 Washington consumers. On the facts of this case, joinder of

---

[1] Plaintiffs have also asserted causes of action for common law aiding and abetting, breach of fiduciary duty, and injunctive relief. Pls.' First Am. Compl., ECF No. 27, at ¶¶ 80-92. These claims are not specifically addressed in Plaintiffs' motion and do not appear to be encompassed within the parties' proposed Settlement Agreement. Accordingly, the court will not include these claims among those being pursued by the class.

2,938 individual claims would be impracticable.  Accordingly, the court preliminarily concludes that the numerosity requirement has been satisfied.

### ii. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  For purposes of this rule, "[c]ommonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation and citation omitted).  This requirement serves to ensure that class-wide adjudication will "generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 131 S. Ct. at 2551 (emphasis in original) (internal quotation and citation omitted).

Like its companion case currently pending in this court, this case presents one overarching question of law and fact common to all class members: whether Defendants charged (1) an initial fee in excess of 25.00; and/or (2) a service fee in excess of 15% of any one individual payment.  *See Brown v. Consumer Law Associates, LLC.*, --- F.R.D. ---, 2012 WL 2236629 at *9-*10 (E.D. Wash. June 15, 2012).  This single question is dispositive for purposes of establishing liability under the DAA and CPA.  Accordingly, the court preliminarily concludes that the commonality requirement has been satisfied.

1          iii.  *Typicality*

2          Rule 23(a)(3) provides that "the claims or defenses of the representative

3    parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P.

4    23(a)(3).  This requirement serves to ensure that "the interest of the named

5    representative aligns with the interests of the class."  *Wolin*, 617 F.3d at 1175.

6    Factors relevant to typicality include "whether other members have the same or

7    similar injury, whether the action is based on conduct which is not unique to the

8    named plaintiffs, and whether other class members have been injured by the same

9    course of conduct."  *Ellis*, 657 F.3d at 984.  In other words, "[t]ypicality refers to

10   the nature of the claim or defense of the class representative, and not to the specific

11   facts from which it arose or the relief sought."  *Id.*; *see also Stearns v. Ticketmaster*

12   *Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) ("The typicality requirement looks to

13   whether the claims of the class representatives are typical of those of the class, and

14   is satisfied when each class member's claim arises from the same course of events,

15   and each class member makes similar legal arguments to prove the defendant's

16   liability.").

17         Here, named class representatives Shannon Bronzich and Cathleen Farris

18   have alleged that Defendants violated the DAA and CPA by charging them (1)

19   initial fees in excess of $25.00; and (2) service fees in excess of 15% of any one

20   individual payment.  EFC No. 27 at ¶¶ 74-79.  These claims are typical of—

1  indeed, identical to—the claims of all other proposed class members.  Accordingly,

2  the Court preliminarily concludes that the typicality requirement has been satisfied.

3                 iv.  *Adequacy of Representation*

4        Rule 23(a)(4), which is the final prerequisite for class certification, requires

5  that "the representative parties will fairly and adequately protect the interests of the

6  class."  Fed. R. Civ. P. 23(a)(4).  This requirement applies to both the named

7  plaintiff and to his or her attorney.  "To determine whether named plaintiffs will

8  adequately represent a class, courts must resolve two questions: (1) do the named

9  plaintiffs and their counsel have any conflicts of interest with other class

10  members[;] and (2) will the named plaintiffs and their counsel prosecute the action

11  vigorously on behalf of the class?"  *Ellis*, 657 F.3d at 985.

12        Regarding representation by class counsel, the court finds that Plaintiffs'

13  counsel are capable of fairly and adequately representing the entire class.  These

14  attorneys have extensive experience in prosecuting class actions in the consumer

15  protection context and have served capably as class counsel in a companion case

16  involving alleged violations of the DAA and CPA.  Accordingly, the court

17  preliminarily concludes that Plaintiffs' counsel are qualified to serve as class

18  counsel.

19        With regard to representation of the class by the named class representatives,

20  the court finds that Shannon Bronzich and Cathleen Farris are capable of fairly and

adequately protecting the interests of all class members.  Although this Court has previously drawn a distinction between current clients and former clients for purposes of the Rule 23(a)(4) analysis in a companion case (*see Brown*, --- F.R.D. ---, 2012 WL 2236629 at \*12), it is unnecessary to draw a similar distinction here. Unlike the defendants' former clients in the companion case, the former clients in this case have not sought to declare their contracts with Defendants void *ab initio* and to recover all fees not previously distributed to creditors.  *Cf. Brown*, --- F.R.D. ---, 2012 WL 2236629 at \*12).  Rather, the former clients in this case have merely sought to recover a portion of the fees which they paid to Defendants— without invalidating their contracts.  Moreover, the proposed Settlement Agreement allows current clients to recover certain fees paid to Defendants while still maintaining their enrollment in Defendants' debt settlement program. Accordingly, this case does not create a potential conflict of interest between current and former clients, and the named class representatives may therefore represent both groups.

  2.  Rule 23(b)(3) Requirements

    i.  *Do Common Questions of Law or Fact Predominate?*

  Under Rule 23(b)(3), the relevant inquiry is whether questions of law or fact common to all class members *predominate* over individualized questions.  *See Wolin*, 617 F.3d at 1172 ("While Rule 23(a)(2) asks whether there are issues

1    common to the class, Rule 23(b)(3) asks whether these common questions

2    predominate.").  Although Rule 23(a)(2) and Rule 23(b)(3) both address

3    commonality, "the 23(b)(3) test is 'far more demanding,' and asks 'whether

4    proposed classes are sufficiently cohesive to warrant adjudication by

5    representation.'"  *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-

6    24 (1997)).

7        Here, questions of law and fact common to the class members clearly

8    predominate over individualized questions.  As discussed above, the dispositive

9    question for purposes of establishing liability is whether class members were

10   charged (1) an initial fee in excess of $25.00; and/or (2) service fees exceeding

11   15% of any one individual payment.  This question is common to all class

12   members and can be answered quickly and decisively by examining each class

13   member's billing history.  At bottom, the only individualized questions presented

14   in this case are questions relating to damages—*i.e.*, the amount that each class

15   member was charged in illegal fees.  Once again, these questions can be answered

16   by examining each class member's billing history.  Accordingly, the Court

17   preliminarily concludes that the predominance requirement has been satisfied.

18           ii.  *Is Class Adjudication Superior to Individual Actions?*

19       In considering whether class adjudication is superior to separate individual

20   actions, a court must determine "whether the objectives of the particular class

ORDER GRANTING PRELIMINARY APPROVAL ~ 10

action procedure will be achieved in the particular case." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). In general, a court conducting this superiority analysis must consider, *inter alia*, (1) the interests of individual class members in pursuing their claims separately; (2) the extent of any existing litigation concerning the same subject-matter; (3) the desirability of concentrating the litigation in a particular forum; and (4) the feasibility of managing the case as a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). When certification is sought for purposes of settlement only, however, a court need not consider the feasibility of managing the case as a class action under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (citation omitted).

The Court finds that adjudication of this case on a class-wide basis is superior to maintaining individual actions. First, the Court is not aware of any other litigation concerning the same subject-matter between Washington residents and these Defendants. Second, concentrating this litigation in the Eastern District of Washington is appropriate given that the proposed class members are all residents of the State of Washington. Finally, it does not appear that class members will have a significant interest in litigating their claims separately.

Because the potential value of each class member's claim is relatively small, the cost of litigating individual claims would likely exceed the value of any potential recovery.  In this circumstance, class-wide adjudication is generally preferable. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (noting that certification is generally proper when class members will be "unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure").  Accordingly, the Court preliminarily concludes that the superiority requirement has been satisfied.

## C. Preliminary Assessment of the Proposed Settlement Terms

Rule 23(e)(2) requires the Court to ensure that a proposed class action settlement is fair, adequate and reasonable prior to granting formal approval.  Fed. R. Civ. P. 23(e)(2).  At this preliminary juncture, the Court's role is to verify that the proposed settlement falls within the "range of reasonableness" contemplated by Rule 23(e)(2).  4 *Newberg on Class Actions* § 11:26 (4th ed. 2002).  For the reasons discussed below, the Court preliminarily concludes that the proposed settlement satisfies the requirements of Rule 23(e).

### 1. *The Settlement Agreement's Basic Terms*

In general terms, the proposed Settlement Agreement calls for Defendants to pay $2.2 million to settle all claims.  Of this sum, $1.54 million will be distributed directly to class members in proportionate shares.  Class counsel will receive not

ORDER GRANTING PRELIMINARY APPROVAL ~ 12

more than $650,000 for their efforts in litigating the case. Named Plaintiffs Shannon Bronzich and Cathleen Farris will receive a stipend of $5,000 each as compensation for serving as class representatives. In addition, Defendants will modify their fee collection practices as to existing Washington customers. With the limited reservations addressed below, the Court preliminarily concludes that these terms fall within the range of reasonableness contemplated by Rule 23(e).

### 2. Cy Pres *Provision*

The parties' Settlement Agreement calls for the creation of a *cy pres* fund into which all non-negotiated or returned checks will be deposited in the event that the aggregate value of such checks amounts to less than fifty thousand dollars ($50,000). ECF No. 274, Exhibit 1, at ¶ 8. The original version of the agreement specified that "[t]he *cy pres* fund [would] be donated to the Legal Foundation of Washington for services associated with assisting low income individuals struggling with debt." ECF No. 274, Exhibit 1, at ¶ 8. The parties have since amended the agreement to direct the *cy pres* fund to the "Northwest Justice Project for the purpose of assisting and educating Washington residents with respect to practices of the debt settlement industry and issues relating to the Washington Debt Adjusting Act." ECF No. 282-1. With this amendment, the Court preliminarily concludes that the proposed *cy pres* provision adequately reflects (1) the objectives of the consumer protection statutes upon which this lawsuit is based, and (2) the

1  interests of the absent class members.  *See Dennis v. Kellogg Co.*, --- F.3d ---, 2012

2  WL 3800230 at *5 (9th Cir. Sept. 4, 2012) (emphasizing that Rule 23(e)(2)

3  requires "a driving nexus between the plaintiff class and the *cy pres* beneficiaries).

4                3.  *Formula for Calculating Damages Awards*

5         The Settlement Agreement provides that each class member's share of

6  recovery shall be calculated according to the formula $(A \div B) \times C$, where "A"

7  represents the total fees paid by the class member pursuant to his or her debt

8  settlement contract with Defendants; "B" represents the aggregate total of all such

9  fees paid by class members ($4,606,896.57); and "C" represents the negotiated

10  class payment in the amount of $1,540,000.  As the parties correctly note, this

11  formula allows each class member to recover a share of the class payment in

12  proportion to the fees which he or she actually paid to Defendants.  Because the

13  amount of fees paid by each class member varies widely, a system of proportionate

14  recovery seems appropriate.

15         One potential problem with the proposed formula, however, is that it tends

16  to favor class members who either fully or substantially completed Defendants'

17  debt settlement program over those who dropped out early.  In other words, the

18  proposed formula results in class members whose debts were successfully settled

19  receiving the same proportionate recovery as class members who dropped out of

20  the program before any of their debts were settled.  This causes a potential

inequity.  Accordingly, the Court encourages the parties to consider revising their damages formula to account for not only the amount of fees paid by each class member, but also the benefit flowing to each class member from the payment of those fees.

### 4.  *Relief for Current Clients*

The parties assert that the Settlement Agreement "provides substantial injunctive relief" to class members who are currently enrolled in Defendants' debt settlement program by (1) prohibiting Defendants from collecting any additional fees "unless and until it sends payment to the client's creditor;" and (2) capping the fees that Defendants may charge their current Washington clients to fifteen percent (15%) of the amount of any debt that is settled for the client.  ECF No. 273 at 10.  Having reviewed the language of the Settlement Agreement, the Court finds that the nature of the relief afforded to Defendants' current clients has been sufficiently explained.

For purposes of clarification, however, the Court notes that the relief specified in the Settlement Agreement is not "injunctive" in nature.  Rather, the Settlement Agreement merely calls for a constructive amendment to the fee agreements between Defendants and their existing Washington customers.  Notably, the agreement does not purport to enjoin Defendants from charging *future* clients fees which may violate the DAA.  ECF No. 274 at 22 ("The changes in fee

structure set forth in paragraph 5(e)(1) and (e)(2) are applicable only to current clients of P&A residing in the State of Washington as of the Effective Date . . . and shall not apply to any client who engages P&A after the Effective Date.").  This distinction is important, as the parties have not sought certification of—and the Court has therefore not certified—an injunctive class under Rule 23(b)(2).

### D. Approval of the Proposed Notice Plan

Under Rule 23(c)(2), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed R. Civ. P. 23(c)(2).  The best notice practicable is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Having reviewed the proposed notice program (ECF No. 274, Exhibit B), the court finds that it satisfies this standard.  Notably, the notice program provides for individual notice via both first-class mail and electronic mail using the most recent contact information available.  The notice also specifies that class members will have seventy-five (75) days from the date of the initial mailing within which to exclude themselves from the class and/or to object to the terms of the proposed

settlement.  The notice itself is written in plain language that advises class members of their rights in a clear and concise manner.

Accordingly, the Court approves the proposed notice program and directs that it be implemented forthwith, <u>subject to Class Counsel making the following changes:</u>

1. **Section 7** – CHANGE "Legal Foundation of Washington" to "Northwest Justice Project."

2. **Section 7** – INSERT the word "preliminarily" between the words "been" and "approved," such that the latter portion of the first sentence reads ". . . which distribution plan has been preliminarily approved by the Court."

3. **Section 14, ¶ 3** – ADD the following <u>mailing</u> address and designate it as such:

   Clerk of the Court
   United States District Court for the Eastern District of Washington
   P.O. Box 1493
   Spokane, WA 99210

**E. Appointment of Class Representatives**

The Court hereby provisionally appoints Plaintiffs Shannon Bronzich and Cathleen Farris as named class representatives.

//

//

ORDER GRANTING PRELIMINARY APPROVAL ~ 17

**F. Appointment of Class Counsel**

The Court hereby provisionally appoints the following attorneys as class

counsel:

    Darrell W. Scott
    Matthew J. Zuchetto
    The Scott Law Group, PS
    926 W. Sprague Ave., Suite 583
    Spokane, WA 99201

    Toby J. Marshall
    Terrell Marshall Daudt & Willie PLLC
    936 North 34th Street, Suite 400
    Seattle, WA 98103

The Court further appoints the Scott Law Group, PS, as the Settlement

Administrator.

**G. Final Fairness Hearing**

The Court hereby schedules a final fairness hearing for **January 23, 2013,**

**at 9:00 a.m.,** at the U.S. District Courthouse in Spokane.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.     The Court preliminarily approves the Settlement Agreement and the

terms set forth therein—including the relief afforded the Settlement Class, the

stipends to the Class Representatives, and the payment of attorneys' fees and costs

to Class Counsel (including costs for notice and settlement administration)—as

being fair, reasonable and adequate.  The Settlement Agreement is the result of

arm's-length negotiations between experienced attorneys who are familiar with

class action litigation in general and with the legal and factual issues of this case in particular.

2.    Pursuant to Fed. R. Civ. P. 23(b)(3), the Court conditionally certifies for settlement purposes only the following Class: "All natural persons who entered into retainer agreements with Griffith & Ruther, LLC, Ruther & Associates, LLC or Persels & Associates, LLC between September 2, 2006, and the date of Preliminary Approval of the Settlement Agreement and who were residents of Washington at the time of entering into such agreements."

3.    A final approval hearing ("Final Fairness Hearing"), for purposes of determining whether the settlements should be finally approved, shall be held before this Court on **January 23, 2013, at 9:00 a.m.,** in the courtroom of the Honorable Thomas O. Rice at 920 West Riverside Avenue, Courtroom 902, Spokane, Washington, 99201.  At the hearing, the Court will hear arguments concerning whether the proposed settlement on the terms and conditions provided for in the Settlement Agreement should be granted final approval by the Court as fair, reasonable and adequate.

4.    The Court approves, as to form and content (with the changes noted in Section D, supra), the Class Notice attached to the Settlement Agreement as Exhibit B to be sent to the Class Members.  The approved notice advises Class Members of their rights, including the right to object to or exclude themselves

from the Settlement Agreement, and explains the manner in which such rights are to be exercised.  In addition, the Court finds that distribution of the Class Notice substantially in the manner set forth in Paragraph 5 of this order will meet the requirements of due process and applicable law, will provide the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all individuals entitled thereto.

5.    The procedure for distributing the Class Notice shall be as follows:

(a)    Within ten (10) business days of the entry of this Order, Defendants shall produce a list to the Settlement Administrator that contains the following information for each Class Member: name, last known mailing address, last known email address, plan reference number, date of retainer agreement, total amount of fees paid to Persels & Associates (not including any fees that were subsequently refunded, and status as a current or former client of Persels & Associates, for every potential member of the Class; and

(b)    No later than thirty (30) days[2] after entry of this Order, the Settlement Administrator shall issue notice to all proposed Class Members in the form approved in ¶ 4 of this Order.  Notice shall be sent directly through first-class mail and, where possible, by electronic mail using the most recent contact

---

[2]  Fed. R. Civ. P. 6 provides the method for computing time herein.

1  information available.  The date on which the notice is sent shall be deemed the

2  Initial Notice Mailing Date.

3       6.     No later than ninety (90) calendar days after entry of this Order, Class

4  Counsel shall file a motion requesting that the Court grant final approval of the

5  Settlement Agreement, including the payment of attorneys' fees and expenses, and

6  enter final judgment in the action.

7       7.     Any potential Class Member may elect to be excluded from the

8  Settlement and from the Class by opting out of the Class.  Any Class Member who

9  desires to be excluded from the Class must no later than seventy-five (75) calendar

10  days after the Initial Notice Mailing Date provide to the Settlement Administrator

11  by mail or email a notice of the election to be excluded, with copies by mail or

12  email to Class Counsel and to Defendants' counsel.  For notices of exclusion sent

13  by mail, the date of the postmark on the envelope shall be the exclusive means of

14  determining whether a request for exclusion has been timely submitted.  Notices of

15  exclusion by email shall be deemed timely if sent before midnight in the sender's

16  time zone on the exclusion deadline date.  The notice form approved in ¶ 4 of this

17  Order provides instructions regarding how to make objections.

18       8.     No later than eighty-two (82) calendar days after the Initial Notice

19  Mailing Date, Class Counsel shall file under seal and serve a declaration

20

ORDER GRANTING PRELIMINARY APPROVAL ~ 21

1  identifying all individuals who have made a timely and valid request for exclusion

2  from the Settlement Agreement.

3      9.      Any Class Member who intends to object to the fairness,

4  reasonableness, or adequacy of the Settlement must notify the Court, Class

5  Counsel, and the Settlement Administrator in writing, sent by mail or email on or

6  before the date specified in the Notice of Proposed Class Action Settlement, of the

7  Class Member's intention to object to the Settlement.  The notice of objection shall

8  include: (a) the Class Member's full name, address, and telephone number, (b) a

9  written statement of all objections, (c) a statement regarding whether the objecting

10  Class Member intends to appear at the Fairness Hearing.  For notices of objection

11  sent by mail, the date of the postmark on the envelope shall be the exclusive means

12  of determining whether an objection has been timely submitted.  Notices of

13  objection by email shall be deemed timely if sent before midnight in the sender's

14  time zone on the objection deadline date.  The notice form approved in ¶ 4 of this

15  Order provides instructions regarding how to make objections.

16      10.     The Parties shall submit any responses to objections no later than

17  eighty-two (82) calendar days after the Initial Notice Mailing Date.

18      11.     At the Final Fairness Hearing, the Court shall determine whether the

19  proposed Settlement Agreement shall be finally approved.

20

12.     If final approval does not occur as to the Settlement Agreement, or if the Settlement Agreement is terminated or canceled pursuant to its terms, the Parties shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of that agreement, and that agreement shall be deemed null and void, shall be of no force or effect whatsoever, and shall not be admitted, referred to or utilized by any party for any purpose whatsoever.

13.     Plaintiffs' prior Motion to Certify Class (ECF No. 162), and Defendants' Joint Motion to Strike (ECF No. 236), are both **DENIED AS MOOT**, with leave to renew should final approval of the settlement not occur.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 7th day of September, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING PRELIMINARY APPROVAL ~ 23